PETERSON, Judge.
Randy Lee Daniels was found guilty by a jury of the petty theft of a television and three videocassette recorders from Melrose Elementary School where he worked as a custodian. He appeals the judgment of conviction and sentence of sixty days in the Putnam County Jail. We reverse the conviction and vacate the sentence.
The video equipment was discovered missing after a custodian reported that, upon her arrival at the school one morning, she discovered that an alarm had been turned off and an outside door was slightly ajar. The alarm could be turned off only with a key, and Daniels was one of several employees who had a key. Daniels became a suspect when a co-custodian received an anonymous telephone call from an individual who reported that he had seen some video equipment in Daniels’ car. The following testimony was heard by the jury:
Q Back in February, February 6th of this year, did you get an unusual phone call about some property taken at the elementary school?
A 6th or 7th, one of those days I did get a call from a person who told me—
MR. BOOKHAMMER: Your Honor, I would object to the hearsay nature of this answer.
MS. HARSHMAN: Your Honor, it is not being introduced for the truth of the matter, just his state of mind when he heard it.
MR. BOOKHAMMER: I would object to any specifics of the conversation, Your Honor.
THE COURT: Overruled.
BY MS. HARSHMAN:
Q Tell us what you were told.
A This man did call me and say he had saw some equipment that had Mel-rose Elementary School on it.
Q Where did he see it?
A Well, he didn’t tell me exactly when he saw it. But he said he thought he saw something in Randy’s car. He didn’t give me too much specifics on it. So I invited him down to my house, which is at Melrose. And I called the principal and told him about what the man had told me and asked if he wanted to talk to him.
Q And?
A Well, he went on to tell him about what transpired.
Q What do you remember?
A Yeah. He had saw a VCR. Well, he say he saw a VCR and a TV.
Q Where?
A It was in a town called Speedville, about a mile out of Keystsone Heights, a couple of miles out of Keystone Heights.
Q And where in Speedville?
A I think he told me one of his nephew’s house where he saw the material. I told him I wouldn’t go up there to look for it because that is where he first saw it.
Q Where else did he see it?
A lam not — but that is where he say he saw it, all except the TV. He saw the TV in Randy’s car with the VCR he saw at his nephew’s house.
The anonymous informant was later identified upon cross-examination:
Q Now this person that called you up, is his name Rufus Donnelly?
*484 A Yes.
Q Where is he at now?
A I haven’t the slightest idea.
Q Didn’t you tell the investigator that you thought he was in jail in Bradford County?
A That is where he was the last time I heard from him. But I don’t know where he is now.
Q In other words, the last time you talked to him, he was in jail?
A I didn’t talk to him, but that is what I was informed, that he was incarcerated.
Daniels contends that the trial court erred by allowing the co-employee to testify over objection about a telephone conversation with an individual who did not testify at trial. The state responds by arguing that the statements were not being used to prove the truth of the matter asserted but, rather, to show the effect of the statements on the listener. The state does not support its position by citation to statute or case law.
In Handbook of Florida Evidence, article VIII, section 801.1 (1987), Professor Graham discusses a group of statements which fall outside the category of hearsay as it is defined in section 90.801(l)(c), Florida Statutes. This group includes a statement made by one person to another upon which the latter acted and which had a bearing on his conduct.
For example, a law enforcement official explains his going to the scene of the crime by stating that he received a radio call to proceed to a given location; such testimony is not hearsay. However, if he becomes more specific by repeating definite complaints of a particular crime by the accused, this is so likely to be misused by the jury as evidence of the fact asserted that it should be excluded on the grounds that the probative value of the statement admitted for a nonhear-say purpose is substantially outweighed by the danger of unfair prejudice, Section 90.403.
Graham, supra, at 584-86 (footnotes omitted).
In the instant case, the state says that the evidence was introduced only to show its effect on the listener. The evidence explained, according to the state, that the confidential informant was invited to meet and did meet at the co-custodian’s home to advise the principal firsthand about the informant’s observations. The trial court refused to allow testimony from the principal about the statements made by the informant at the meeting, but the state did succeed in getting the initial hearsay comments to the jury through the co-custodian. We agree with the trial court’s later ruling but find that the earlier allowance of the informant’s statements was error because the statements exceeded the bounds of detail necessary to explain the co-custodian’s actions.
The state seems to be trying to argue that the out-of-court statements were nonhearsay offered to show what has been labeled the “logical sequence of events.” See, e.g., Harris v. State, 544 So.2d 322 (Fla. 4th DCA 1989). Typically, a police officer’s testimony as to the content of a dispatch has been ruled admissible to explain why officers were at a particular place and took a particular action. The testimony is admitted to establish that the statements were made, not that they were true. Johnson v. State, 456 So.2d 529 (Fla. 4th DCA 1984), review denied, 464 So.2d 555 (Fla.1985). However, the mere positing of a nonhearsay purpose for the out-of-court statements does not necessarily make them admissible. If it is important to establish a logical sequence of events, the detailed out-of-court accusatory remarks should be avoided and summary explanations should be substituted. The suggestion in Harris was to explain subsequent events by indicating the officers were there because of “something they were told by an informant.” Harris, 544 So.2d at 324. In State v. Baird, 572 So.2d 904, 908 (Fla. 1990), the supreme court indicated that, to explain an officer’s actions, the better practice is to state that “he acted upon a ‘tip’ or ‘information received’ without going into *485 the details of the accusatory information.” [1]
The state contends alternatively that, even though we may find the informant’s hearsay statements to have been admitted in error, it was harmless error under the test of State v. DiGuilio, 491 So.2d 1129 (Fla.1986). Examination of the permissible evidence on which the jury could have relied legitimately indicates that Daniels, along with several other school employees, had a key to the alarm system. The principal of the school was the first person to confront Daniels and asked him whether he was at the school when the video equipment was taken. Daniels responded only with the statement that he was sorry the things were taken. The principal then asked whether Daniels knew anything about the theft, and Daniels responded that he did not. The next morning, the principal asked Daniels for the key to the alarm and told him that, if the items were returned, “we don’t have a problem ... We can just let this thing get over with.” Daniels responded by saying, “Okay, all right.” At a later meeting, Daniels reported that he could not obtain the equipment, that he “didn’t get the VCRs” and did not “remember taking the television set.” On another occasion, Daniels was given $100 to attempt to buy the equipment. He was not able to do so although he reported that he had found the person who was supposed to have the equipment and had seen it in the trunk of an automobile. That person took the $100, and, when Daniels demanded the return of the equipment or a refund of the money, he was confronted with a gun and was forced to abandon the quest. In addition, at some point, a note was left on the co-custodian’s door bearing the message: “Joe: Didn't find the YCR. All I found was this. Rand.” A school key was attached to the note.
The only other evidence implicating Daniels consisted of his comments to the principal that, on the night of the theft, he and a friend were out with two women, that he had been drinking a lot of liquor and was not sure what had happened that night. He also added that, although he did not remember being at the school, he knew that he had been there several times during the night because his friends told him they saw him there. Daniels thought he had passed out in the back seat of an automobile and perhaps somebody had used his key. The principal further testified that Daniels was never sure that he did not take the equipment, but he did not remember, and that Daniels stated there were some persons who did not like his family and had set him up to be prosecuted for the theft.
This permissible evidence is not clearly conclusive. There was evidence that Daniels knew or found out where to go to recover the property. There was also evidence that, because of his drunken stupor, he could not be sure that he had not taken the equipment although, because of statements by friends, he was convinced that he did visit the school area on the night of the theft. The permissible evidence is consistent with the theory-that Daniels was not sure whether he was involved with the theft, but that, since it appeared that he was the prime suspect, he would attempt to recover the equipment in order to “get this thing over with” as promised by the principal. Given the permissible evidence, we do not believe that the state met its burden to prove beyond a reasonable doubt that the impermissible hearsay comments of the informer did not contribute to the verdict or, alternatively, that there is no reasonable possibility that the error contributed to the conviction. See DiGuilio, 491 So.2d at 1138. We conclude that the error was not harmless and constituted reversible error, and we remand for a new trial.
REVERSED and REMANDED.
DAUKSCH and GRIFFIN., JJ., concur.

. The state does not raise Daniels’ failure to request a limiting or curative instruction, and we will not address the issue other than to indicate that a curative instruction would not have been helpful in view of the highly incriminatory nature of the hearsay statement.